**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

DARYL L. JONES,

                                                        CV 11-03-M-JCL
                                                        CV 10-117-M-JCL
                          Plaintiff,                    (Consolidated)

          vs.                                           ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

_____

        Plaintiff Daryl L. Jones (Jones) brings this action under 42 U.S.C. § 405(g)

seeking judicial review of the decision of the Commissioner of Social Security

(Commissioner) denying his application for supplemental security income benefits

under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c).

        Jones  protectively filed his application for benefits on January 25, 2008,

PAGE 1

alleging he became disabled on May 1, 2006, following a chiropractic procedure.

Tr. 224-226.  Jones claims that as a result of the chiropractic procedure he now

suffers from double vision, cervical pain, muscle spasm, and eye pain.  Tr. 188.

Jones's application was denied initially and on reconsideration.  Tr. 105-109; 113-

114 .  After an administrative hearing at which Jones appeared with counsel, an

Administrative Law Judge (ALJ) issued a decision finding Jones was not disabled

within the meaning of the Act.  Tr. 21-39.

The Appeals Council denied Jones's request for review on August 18, 2010,

and Jones commenced this action seeking judicial review of the Commissioner's

adverse disability determination.  Tr. 8-12.   Approximately three weeks after

Jones filed his complaint in this Court, the Appeals Council set aside its earlier

determination so that it could consider additional evidence Jones had submitted in

support of his request for review.  Tr. 1-3.   Upon doing so, the Appeals Council

concluded that the additional evidence did not provide a basis for reviewing the

ALJ's decision, and denied Jones's request for review.  Tr.  1; *see* 513-36.   On

January 3, 2011, Jones initiated a separate action for judicial review of the

Appeals Council's second decision.   On Jones's subsequent motion, this Court

consolidated the two cases.  Jurisdiction vests with this Court pursuant to 42

U.S.C. § 405(g).

PAGE 2

Jones was 51 years old at the time of his alleged onset date in 2006, and 55 years old at the time of the ALJ's decision in 2010.

## I.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record."  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision."  *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court "may not substitute its judgment for that of the Commissioner."  *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. BURDEN OF PROOF

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).    At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled.  20 C.F.R. §

PAGE 4

404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## III.  DISCUSSION

Following the steps in the sequential evaluation process, the ALJ first found that Jones had not engaged in substantial gainful activity since January 25, 2008 – the date he filed his application for benefits.  Tr. 23.  The ALJ found at step two that Jones had the following severe impairments: "chronic cervicalgia, mild right cervical facet disease and mild foraminal stenosis at the C2-3, C3-4, and C6-7 levels, cervical degenerative disc disease at C7-T1 with posterior intervertebral articulation pseudoarthrosis, and headaches."  Tr. 23.  At step three, the ALJ determined that Jones did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments.  Tr. 27.

At step four, the ALJ found that while Jones's  "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [were] not credible to the extent they [were] inconsistent with" his residual functional capacity.  Tr. 35.  Having found Jones less than entirely credible, the ALJ determined that he retained the residual functional capacity to perform a limited range of light work.  Tr. 28.  Based on that residual functional capacity, the ALJ found Jones could perform past relevant work as a drafter and project estimator.  Tr. 37.  Alternatively, the ALJ found at step five that there were a significant number of jobs in the economy that Jones could perform, including light level work as a data entry clerk, information clerk, and customer service representative.  Tr. 38.

Jones challenges the ALJ's decision on several grounds, each of which is discussed in turn below.

## A.  Severe Impairments

### 1.   Vision and balance impairments

Jones argues the ALJ erred at step two by classifying his vision and balance impairments as non-severe and by failing to consider them in the sequential evaluation process.

An impairment is "severe" if it significantly limits the claimant's ability to

perform basic work activities.  20 C.F.R. § 416.921.  An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).  The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908.

The ALJ acknowledged that Jones had "visual difficulties of the left eye involving double vision" and accepted that he had "a medically determinable impairment associated with his double vision."  Tr. 25.  After a thorough evaluation of the relevant evidence, however, the ALJ found that Jones's visual impairment was not severe for a number of reasons.  As the ALJ noted, for example, Jones's best corrected vision was "20/20 in each eye at distance and near," and his double vision improved with the use of a "lateral and vertical prism" in his "spectacle correction."  Tr. 25.  The ALJ also found that Jones's testimony as to the severity of his double vision, which he claimed prevented him from reading or working on a computer, was not consistent with the evidence of record showing that Jones was able to read effectively and perform research on the computer.  Tr. 25-26; 79.  Of further significance to the ALJ was the fact that

PAGE 7

Jones still had a driver's licence and no doctor had ever instructed him not to drive or imposed any restrictions on his driving.  Tr. 25-26.  Finally, the ALJ observed that notwithstanding Jones's testimony as to the incapacitating effects of his double vision, he reported being able to perform light household cleaning tasks and operate a riding lawn mower.  Tr. 26, 216.  The ALJ properly determined based on such evidence that while Jones did have a medically determinable impairment associated with his double vision, that impairment was not severe because it did not significantly limit his ability to perform work-related functions. Tr. 25.

Jones also argues the ALJ erred by not categorizing his vestibular impairment as severe and by not including any corresponding balance-related limitations in his residual functional capacity assessment.  Jones is mistaken. While the ALJ did not specifically address Jones's alleged vestibular impairment at step two, he appropriately discussed Jones's balance-related symptoms at steps three and four.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  The ALJ recognized that Jones had reported problems with equilibrium and dizziness, likewise observed that those symptoms "improved 70% with manipulation and therapy[.]"  Tr. 30, 33.  The ALJ specifically accounted for Jones's balance-related symptoms when assessing his residual functional capacity, stating that Jones "must

PAGE 8

avoid concentrated exposure to vibration, including vibratory surfaces and hand controls, and to hazards, for example, heights and moving machinery[.]"  Tr. 28; 343-50.  Because the ALJ appropriately considered Jones's balance-related symptoms in the sequential evaluation process and accounted for any associated limitations in the residual functional capacity assessment, any error on the ALJ's part in not discussing his vestibular impairment at step two was harmless.  *See Lewis*, 498 F.3d at 911.

### 2.    Cluster headaches

Jones next argues the ALJ erred by finding that his cluster headaches were severe at step two, but failing to incorporate any corresponding restrictions in the residual functional capacity assessment.  But Jones fails to explain what additional headache-related limitations he believes the ALJ should have incorporated. Review of the record shows that the ALJ thoroughly considered Jones's medical records, and accepted that Jones had been "diagnosed with cluster-type headaches."  Tr. 24.  The ALJ agreed that those headaches, in conjunction with Jones's cervical spine impairments, were severe and appropriately accounted for those impairments in the residual functional capacity assessment.  Tr. 24.   The ALJ limited Jones to a range of light work and stated that he was to avoid heights and concentrated exposure to vibration or any hazard that might cause a jarring

PAGE 9

motion.  Tr. 28.  The ALJ settled on those restrictions after having engaged in an
extensive discussion of Jones's medical records, and Jones has not shown that his
cluster-headaches were so debilitating as to further limit his ability to perform
work-related tasks.

### 3.    Mental impairments

In much the same fashion, Jones argues the ALJ erred by finding that his
mental impairments were severe without including any corresponding limitations
when assessing his ability to work.  But the ALJ did not in fact find that Jones's
mental impairments were severe.  To the contrary, the ALJ specifically found at
step two that while Jones did "have medically determinable mental impairments of
a major depressive disorder, a generalized anxiety disorder, and a personality
disorder not otherwise specified," those impairments were "non-severe."  Tr. 27.
In reaching that determination, the ALJ rejected an opinion by examining
physician Dr. David Mahoney in favor of other evidence of record suggesting that
Jones's mental impairments did not result in anything more than mild restrictions.[1]
Tr. 26-28.

This brings the Court to Jones's next argument, which is that the ALJ also

_____

[1] As discussed below, the ALJ cited sufficiently clear and convincing reasons
for rejecting Dr. Mahoney's opinion.

PAGE 10

erred at step two by not following the special technique for evaluating medically
determinable mental impairments.  This special technique requires that an ALJ
first determine whether a claimant has a medically determinable mental
impairment, and then rate the degree of functional limitation in four areas:
activities of daily living, social functioning, concentration/persistence/pace, and
episodes of decompensation.  20 C.F.R. § 404.1520a(b)-(c).  The ALJ must then
determine the severity of the mental impairment based in part on the degree of
functional limitation, and "if the impairment is severe, proceed to step three of the
disability analysis to determine if the impairment meets or equals a specific listed
mental disorder.  *Keyser v. Commissioner of Social Security*, 648 F.3d 721, 725
(9th  Cir. 2011)  (citing 20 C.F.R. § 404.1520a(c)(1)&(2)).  The ALJ must
document his application of the technique in his written decision by "incorporating
the pertinent findings and conclusions based on the technique" and including "a
specific finding as to the degree of limitation in each of the functional areas."[2]
*Keyser*, 648 F.3d at 725.

Although the ALJ did not adequately document his application of the
special technique in his step two analysis, he included the requisite findings and

---

[2]  Alternatively, the ALJ may "complete a PRTF and append it to the decision."
*Keyser*, 648 F.3d at 725.  The ALJ did not complete a PRTF in this case.

PAGE 11

conclusions in his step three analysis.  Many of the disabling mental impairments

listed at 20 C.F.R. subpt. P, app. 1 contain functional categories that parallel the

functional categories involved in the special technique for evaluating mental

impairments.  The so-called "B criteria" of  Listings 12.04 for Affective Disorders,

12.06 for Anxiety-Related Disorders, 12.07 for Somatoform Disorders, and 12.08

for Personality Disorders all require that an ALJ evaluate the degree of a

claimant's functional limitation in activities of daily living, social functioning,

concentration, persistence, or pace, and episodes of decompensation.

The ALJ specifically discussed each of the above listings at step three, and

in doing so determined that Jones's mental impairments resulted in nothing "more

than mild restrictions in the functional categories of the B criteria of the respective

listings."  Tr. 28.   The ALJ first found that Jones's mental impairments caused

only mild restrictions in his activities of daily living because he was able to tend to

his personal care needs, perform household chores, attend medical appointments,

and work on his computer.  Tr. 28.  The ALJ similarly found that Jones's social

functioning was only mildly restricted, as evidenced by the fact that he had

"maintained a relationship with a significant other for about 8 years," was able to

talk on the phone with friends and healthcare providers, had no difficulties being

out in public, and occasionally attended car or truck shows.  Tr. 28.  The ALJ also

PAGE 12

found that Jones had only mild difficulties with concentration, persistence and pace because Dr. Mahoney had written that Jones's ability to concentrate was normal and Jones had reported being able to pay attention well and follow instructions.  Tr. 28.  Finally, the ALJ noted that Jones had experienced no episodes of decompensation of an extended duration.  Tr. 28.

The ALJ thus rated Jones in the four functional areas described in the special technique, and incorporated those findings into his written decision.   The ALJ thus accomplished all that the special technique required of him – he determined that Jones had medically determinable mental impairments, rated the degree of Jones's limitation in each of the four functional areas described in 20 C.F.R. § 404.1520a(c)(3), and assessed the severity of Jones's mental impairments accordingly.   To the extent the ALJ erred by including those findings in his step three analysis instead of at step two, that error was harmless.  Read as a whole, the ALJ's decision adequately documents his application of the special technique when evaluating the severity of Jones's medically determinable mental impairments.

### B.    Medical Opinions

Jones argues the ALJ failed to cite sufficient reasons for rejecting the opinion of treating physician Dr. Steven Johnson and examining psychologist Dr.

PAGE 13

David Mahoney.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d)(2).

To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If a treating physician's opinion is uncontradicted, however, the ALJ may only reject it for clear and convincing reasons that are supported by substantial evidence in the record.  *Reddick*, 157 F.3d at 725 (*quoting Lester*, 81 F.3d at 830);

PAGE 14

*Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751.  A medical opinion is

considered uncontroverted if all the underlying medical findings of claimant's

physical impairments in  the record are similar.  *Sprague v. Bowen*, 812 F.2d 1226,

1230 (9th Cir. 1987).  Similar standards apply to the ALJ's evaluation of an

examining physician's opinion.  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th

Cir. 2006).

While the opinions of non-treating, non-examining physicians may under

certain circumstances constitute substantial evidence, this is so only if they "are

consistent with independent clinical findings or other evidence in the record."

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 1.   Dr. Johnson

Jones argues the ALJ erred by not giving more weight to a February 2008

letter Dr. Johnson wrote in support of his application for disability benefits.[3]   Dr.

Johnson explained that he had been treating Jones for approximately six months,

and wrote that he believed Jones was disabled as a result of his upper cervical

problems, visual disturbances, neck pain, and headaches.  Tr. 398.

The ALJ acknowledged Dr. Johnson's letter and gave it what he described

---

[3]   Because Dr. Johnson's opinion as to Jones's physical limitations was
contradicted by that of the state agency physician, the ALJ could reject it for specific
and legitimate reasons.

PAGE 15

as "middle weight," accepting that Jones suffered from severe cervical impairments that significantly limited his ability to work.  But the ALJ declined to accept Dr. Johnson's conclusory statement that Jones was permanently disabled from all gainful employment as a result of those impairments.  Tr. 26.  The ALJ rejected Dr. Johnson's assessment on the grounds that it was "not supported by his treatment records" and was not "consistent with the substantial evidence of record, including [Jones's] optical examinations, and neurological as well as orthopedic evaluations."  Tr. 36.  The record reflects that Dr. Johnson first saw Jones in July 2007, and saw him six more times before he wrote the February 2008 letter.  Tr. 398-411.  During that period, Jones complained of neck pain, vision problems, and headaches.  Tr. 398-411.  While Dr. Johnson's treatment notes corroborate that Jones was diagnosed with severe cervical impairments, they otherwise reflect a  conservative course of treatment consisting of one cervical injection and prescription medications for pain and trouble sleeping.  Tr. 398-411.  The ALJ appropriately found that those records provided little in the way of support for  Dr. Johnson's conclusory statement regarding Jones's inability to work.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ may reject a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings.")

PAGE 16

It was also appropriate for the ALJ to reject Dr. Johnson's opinion on the ground that it was not consistent with other medical evidence of record, including various optical, neurological, and orthopedic examinations. Tr. 36. The ALJ detailed much of that medical evidence in his decision, noting for example that the results of a neurological evaluation at Glacier Nuerosicence & Spine Center in May 2007 were "largely unremarkable." Tr. 30, 317. And as the ALJ also recognized, a subsequent MRI of Jones's brain "showed no significant abnormalities." Tr. 315, 31. While other tests established that Jones had severe cervical impairments, imaging studies taken of Jones's left eye in June 2007 showed no abnormalities, and Jones reported in July 2008 that his double vision improved with Methadone. Tr. 33.

Although the ALJ did not give Dr. Johnson's opinion the "great weight" Jones claims it deserves, the ALJ did recognize that Jones would have some limitations due to his cervical spine impairments, and accommodated for them by restricting Jones to a range of light of light work. Tr. 36. The Court is thus satisfied that the ALJ gave due consideration to Dr. Johnson's opinion and properly rejected his assessment of Jones's ability to work which is, in any event, an issue for the Commissioner to decide. See 20 C.F.R. §§ 404.1527(e) and 416.927(e).

PAGE 17

2.    Dr. Mahoney

Jones next asserts the ALJ failed to provide clear and convincing reasons

for rejecting the opinion of examining psychologist Dr. David Mahoney.[4]

Dr. Mahoney examined Jones in September 2009 at the request of Jones's

attorney.  Tr. 443.  Dr. Mahoney detailed Jones's self-reported personal and

mental health history, assessed Jones's mental status, and administered the MMPI-

2 for purposes of getting "greater clarity of the suspected personality and clinical

concerns."  Tr. 443-45.  Dr. Mahoney concluded that Jones was depressed, and

concluded based on "his interview and with a close reading of his medical records

and the results of the MMPI-2" that Jones was "experiencing the general

symptoms of some form of personality disorder."  Tr. 446.  Dr. Mahoney wrote in

closing that Jones had difficulty "managing friendships or personal relationships,"

was "incapable of establishing, maintaining or sustaining necessary work

relationships," alienated people easily, and was "unable to work" or engage in

"sustained physical or mental labor."  Tr. 446.

The ALJ accepted Dr. Mahoney's opinion to a certain extent, because he

---

[4]  Because there is no evidence of Jones ever having been evaluated by another
mental health professional and no directly contradictory medical opinion in the
record, the ALJ could reject Dr. Mahoney's opinion only for clear and convincing
reasons.

agreed that Jones had a major depressive disorder, a generalized anxiety disorder, and a personality disorder not otherwise specified.  Tr. 27.   But the ALJ did not accept Dr. Mahoney's assessment as to the severity of those impairments on the ground that his was a "one-time evaluation" and there was no evidence that Jones's mental impairments resulted "in more than mild restrictions."  Tr. 26-28. The ALJ pointed to ample evidence that Jones's mental impairments were not as disabling as Dr. Mahoney believed based on his one-time examination.  For example, while Dr. Mahoney stated that Jones would have difficulty "managing friendships or personal relationships," the ALJ noted that Jones had been in a relationship with a significant other for about eight years, talked on the phone with his friends and doctors, and had no problem being out in public.  Tr. 28, 448. And while Jones reported to Dr. Mahoney that he experienced occasional panic attacks, the ALJ observed that there were "no reports of panic attacks in [Jones's] treatment records" and Jones did not testify to having experienced any panic attacks.  Tr. 26.   Also, the ALJ found it significant that despite the longstanding nature of Jones's mental impairments, he had been capable of maintaining employment before 1998.  Tr. 26.  These were clear and convincing grounds for discounting Dr. Mahoney's opinion as to the severity of Jones's mental impairments.

PAGE 19

## C. Credibility

Jones also argues the ALJ failed to cite sufficiently clear and convincing reasons for discrediting his subjective testimony.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis:  (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing  *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  *Smolen*, 80 F.3d at

PAGE 20

1284.  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In assessing credibility the ALJ must also consider the factors set forth in SSR 96-7p including:

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *See also* 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Jones suffers from several severe impairments that can reasonably be expected to produce the alleged symptoms.  Tr. 23; 35.  Thus,

PAGE 21

Jones has made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ acknowledged Jones's testimony as to the severity of his pain and functional limitations, but found him only partially credible for a number of reasons.  Tr. 35.  First, the ALJ considered the conservative nature of Jones's treatment, including the fact that no doctor had recommended surgery.  Tr. 35. See *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment").  The ALJ also found the fact that there were significant gaps in Jones's treatment history for his eye and neck problems undermined his testimony as to the debilitating severity of those impairments.  Tr. 35.  *See Burch v Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

The ALJ also questioned Jones's motivation to work based on the fact that he had no "earnings in the 7 years prior to his alleged onset date of disability in May 2006."  Tr. 36.  The ALJ appropriately considered Jones's apparent lack of motivation as one of the several factors casting doubt on his credibility.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding no error on ALJ's part in considering claimant's poor work history in his adverse credibility determination).

PAGE 22

The ALJ mentioned other items that detracted from Jones's credibility.  As noted above, for example, while Jones testified that he could not "see to look at a computer screen" or "read a document," he had drafted many lengthy letters to his healthcare providers.  Tr. 73, 78-81.  The ALJ found it was obvious from those communications that Jones was "spending time researching, reading, drafting, and sending" those letters, which understandably caused him "to question the veracity of [Jones's] allegations of disabling vision problems as well as his allegations of a complete inability to function day-to-day."  Tr. 36.  And while Jones testified that he did not drive often because it was hard for him to see, the ALJ noted that no doctor had ever restricted his driving privileges.  Tr. 26, 66.

The ALJ reasonably found based on his review of the record that Jones was capable of greater activity than he alleged, and provided sufficiently clear and convincing reasons for discrediting his testimony.

### D.  Lay Testimony

Jones next argues the ALJ failed to provide germane reasons for rejecting the lay statement of Jones's house mate and partner, Ramona Berg.   Tr. 278-79.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v.*

PAGE 23

*Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12

F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4)

& (e)).  "If the ALJ wishes to discount the testimony of lay witnesses, he must

give reasons that are germane to each witness."  *Stout*, 454 F.2d at 1053 (quoting

*Dodrill*, 12 F.3d at 919).

Berg wrote a letter in support of Jones's application for benefits in which

she described Jones's daily activities as being extremely limited.  Tr. 278-79.  For

example, Berg wrote that Jones spent "his mornings just trying to get his bearings

to be able to semi function," would walk unsteadily down the hall upon getting out

of bed every morning, would sit in the recliner staring at the floor, and spent most

of his time watching television or listening to the radio.  Tr. 279.

The ALJ discredited Berg's statement on the ground that it was "generally

inconsistent with [Jones's] medical treatment," because her observations reflected

the daily activities of "an extremely limited individual," which contradicted

Jones's own accounts of his daily activities and the evidence relating the amount

of research Jones performed on his computer.  Tr. 36.  This was a germane basis

for rejecting Berg's written statement.

### E.  Vocational Expert Testimony

Jones argues the ALJ's hypothetical to the vocational expert was flawed

because it did not incorporate any limitations resulting from Jones's "severe" mental impairments and headache disorder, and failed to incorporate all of the limitations to which Jones testified.  But because the ALJ appropriately found that Jones's mental impairments were not sever, and  properly discredited Jones's testimony, he was not required to include those limitations.  *See  Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence).  Substantial evidence of record supports the ALJ's assessment of Jones's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert.

### F.  Appeals Council

Finally, Jones asserts the Appeals Council erred in denying his request for review. Jones submitted additional evidence to the Appeals Council in support of his request for review, including an Occupational Health and Wellness Functional Capacity evaluation, letters from physicians, and progress notes.  Tr. 512-536. The Appeals Council stated that it had received and considered the additional information and evidence, but denied Jones's request for review because the evidence did "not provide a basis for changing the ALJ's decision."  Tr. 1-2.

Just recently, the Ninth Circuit clarified the standard by which this Court is to evaluate materials submitted to the Appeals Council.  *Taylor v. Commissioner*

PAGE 25

*of Social Security*, — F.3d —, 2011 WL 5084856 ** 1-2 (9th Cir. October 27, 2011).  The Ninth Circuit reiterated that the Court has "no jurisdiction to review the Appeals Council's decision denying [a claimant's] request for review," and "may neither affirm nor reverse the Appeals Council's decision."  *Taylor*, 2011 WL 5084856 *1.  But the Court may consider the additional evidence submitted to the Appeals Council for purposes of determining "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error."  *Taylor*, 2011 WL 5084856 *2.   In other words, the Court may consider evidence that was submitted to the Appeals Council in the Court's "overall review of the ALJ' final decision," but not in review of the Appeal's Council's decision denying Jones's request for review.  *Taylor,* 2011 WL 5084856 *2.

Jones does not explain how any of the materials he submitted in support of request for review might have changed the ALJ's decision.  Having reviewed those materials, the Court is satisfied that they do not provide a basis for changing the ALJ's decision, which is supported by substantial evidence of record.

## IV.  Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error.  Therefore,

PAGE 26

IT IS ORDERED that Jones's  motion for summary judgment is denied, the

Commissioner's motion for summary judgment is granted, and the

Commissioner's decision is affirmed.

DATED this 31st day of October, 2011


 /s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge